1   ROCHELLE D. ALPERT, State Bar No. 65037
    LESLIE C. McKNEW, State Bar No. 178413
2   SHARON R. SMITH, State Bar No. 221428
    MORGAN, LEWIS & BOCKIUS LLP
3   1 Market Street, Spear Street Tower
    San Francisco, CA 94105
4   Tel:  415-442-1326
    Fax:  415-442-1001
5   E-mail:  ralpert@morganlewis.com
            lmcknew@morganlewis.com
6            srsmith@morganlewis.com

7   Attorneys for Plaintiff
    TRADITIONAL MEDICINALS, INC.
8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                      OAKLAND DIVISION

12

13  TRADITIONAL MEDICINALS, INC., a          Case No. 4:07-CV-02457-SBA
    California corporation,
14                                           **MEMORANDUM OF POINTS AND**
                    Plaintiff,               **AUTHORITIES IN SUPPORT OF**
15                                           **PLAINTIFF'S MOTION FOR**
            vs.                              **PRELIMINARY INJUNCTION**
16
    NOVARTIS CONSUMER PRODUCTS,              Date:  July 3, 2007
17  INC., a Delaware corporation; NOVARTIS   Time:  1:00 p.m.
    AG, a corporation of Switzerland, and    Courtroom:  3, Third Floor
18  DOES 1-10, inclusive                     Judge:  Saundra B. Armstrong

19                  Defendant.

20

21

22

23

24

25

26

27

28

2

egmentegment

Case4:07-cv-02457-SBA   Document13-1   Filed05/29/07   Page2 of 31

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................. 1

II.  STATEMENT OF ISSUES ................................................ 2

III.  STATEMENT OF FACTS ................................................. 3

    A.  Traditional Medicinals' Distinctive SMOOTH MOVE® Marks and Established Business Reputation............................................ 4

        1.  Traditional Medicinals Has Widely Promoted Its SMOOTH MOVE® Laxative Products. ............................................. 6

            a)  SMOOTH MOVE® Products Have Been Featured in National Publications and Media. ................................... 6

            b)  SMOOTH MOVE® Products Have Been Featured at Trade Shows ......................................................... 6

        2.  SMOOTH MOVE® Products Are Competitively Priced ........................... 7

    B.  Novartis Only Recently Began Use of the SENNA SMOOTH Designation for a Laxative Product. .................................. 7

    C.  Status of Proceedings ................................................ 9

IV.  ARGUMENT ................................................................ 10

    A.  Traditional Medicinals' Well-Established Rights More Than Satisfy the Ninth Circuit's Standard for Preliminary Injunctive Relief ................. 10

    B.  Traditional Medicinals Has Longstanding Trademark Rights that Demonstrate that It Will Likely Succeed on the Merits........................ 11

        1.  Traditional Medicinals' SMOOTH MOVE® Mark Is Not Only Valid, It Is Incontestable and Entitled to Strong Protection. .................... 11

        2.  Novartis' Confusingly Similar SENNA SMOOTH Designation is Likely to Cause Consumer Confusion with the Longstanding SMOOTH MOVE® Mark, Particularly for a Competitive Product ........ 14

            a)  SMOOTH MOVE® and SENNA SMOOTH Stand as Confusingly Similar Marks. ...................................... 15

            b)  The Products Offered Compete in the Marketplace..................... 17

            c)  SENNA SMOOTH and SMOOTH MOVE® and SMOOTH MOVE® SENNA Products Travel in the Same Channels of Trade. ......................................................... 18

            d)  The SMOOTH MOVE® and SMOOTH MOVE® SENNA Marks Continue to be Distinctive. ................................. 19

            e)  Lack of Actual Confusion Should Not Be a Factor, Since Novartis Only Recently Introduced Its Product. ..................... 20

            f)  The Nature of the Goods Favors Traditional Medicinals............. 21

            g)  Novartis' Apparent Intent in Selecting the SENNA SMOOTH Designation Favors Traditional Medicinals. ............... 21

            h)  Likelihood of Expansion Favors Traditional Medicinals ............ 22

1-SF/7552751.3       i      MEMO OF POINTS AND AUTHORITIES ISO P'S MOTION FOR PRELIM. INJUNCTION (4 07–CV–02457–SBA)

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3        C.      Traditional Medicinals Is Suffering Irreparable Harm........................................... 23

4        D.      The Balance of Hardships Warrants Granting Injunctive Relief .......................... 23

         E.      The Court's Grant of an Injunction Serves the Public Interest ............................. 24

5   V.   CONCLUSION ............................................................................................................. 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Alpha Indus. v. Alpha Steel Tube & Shapes,*
    616 F.2d 440 (9th Cir. 1980)...................................................................................... 15

5

6

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)................................................................. 15, 17, 18, 22

7

*Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.,*
    457 F.3d 1062 (9th Cir. 2006)................................................................................ 20

8

9

*Beer Nuts, Inc. v. Clover Club Foods Co.,*
    805 F.2d 920 (10th Cir. 1986)................................................................................ 21

10

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,*
    973 F.2d 1033 (2d Cir. 1992).................................................................................. 21

11

*Brookfield Comms., Inc. v. W. Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999)................................................................... 11, 20, 21

12

13

*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988)................................................................................ 19

14

*Daesang Corp. v. Rhee Bros., Inc.,*
    77 U.S.P.Q.2d 1753 (D. Md. 2005) ...................................................................... 14

15

16

*Dena Corp. v. Belvedere Int'l, Inc.,*
    950 F.2d 1555 (Fed. Cir. 1991).............................................................................. 8

17

*Dictaphone Corp. v. Dictamatic Corp.,*
    199 U.S.P.Q. 437 (D. Or. 1978).............................................................................. 20

18

*Duncan McIntosh Co., Inc. v. Newport Dunes Marina LLC,*
    324 F. Supp. 2d 1078 (C.D. Cal. 2004) ................................................................ 23

19

20

*E. & J. Gallo Winery v. Consorzio Del Gallo Nero,*
    782 F. Supp. 457 (N.D. Cal. 1991) ...................................................................... 9, 14

21

*Entrepreneur Media, Inc. v. Smith,*
    279 F.3d 1135 (9th Cir. 2002)................................................................................ 14

22

23

*G. D. Searle & Co. v. MDX Purity Pharmacies, Inc.,*
    275 F.Supp. 524 (C.D. Cal. 1967) ........................................................................ 17

24

*Golden Door, Inc. v. Odisho,*
    646 F.2d 347 (9th Cir. 1980)................................................................................ 11

25

26

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000).................................................. 10, 11, 14, 15, 16, 23

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Henri's Food Prods. Co., Inc. v. Kraft, Inc.*,
   717 F.2d 352 (7th Cir. 1983)..............................................................................16

4

*Hewlett-Packard Co. v. Packard Press, Inc.*,
   281 F.3d 1261 (Fed. Cir. 2002)..........................................................................17

5

6

*Jockey Int'l., Inc. v. Burkard*,
   185 U.S.P.Q. 201 (S.D. Cal. 1975)...............................................................11, 21

7

*KOS Pharm., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004)...........................................................................23, 24

8

9

*K-Swiss, Inc. v. USA AISIQI Shoes, Inc.*,
   291 F. Supp. 2d 1116 (C.D. Cal. 2003) ..............................................................23

10

*Lois Sportswear USA, Inc. v. Levi Strauss & Co.*,
   799 F.2d 867 (2d Cir. 1986)...............................................................................14

11

*McLean v. Fleming*,
   96 U.S. 245 (1877)..............................................................................................14

12

13

*Metro Pub., Ltd. v. San Jose Mercury News*,
   987 F.2d 637 (9th Cir. 1993)..............................................................................10

14

*Nikon, Inc. v. Ikon Corp.*,
   987 F.2d 91 (2nd Cir. 1993)...............................................................................17

15

16

*Ocean Garden, Inc. v. Marktrade Co., Inc.*,
   953 F.2d 500 (9th Cir. 1991)..............................................................................19

17

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993)................................................................................21

18

19

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
   469 U.S. 189 (1985)...........................................................................................14

20

*Phillip Morris USA Inc. v. Shalabi*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004) .........................................................11, 24

21

22

*Pizzeria Uno Corp. v. Temple*,
   747, F.2d 1522 (4th Cir. 1984)......................................................................16, 20

23

*Recot, Inc. v. Becton*,
   214 F.3d 1322 (Fed. Cir. 2000)..........................................................................21

24

25

*Rodeo Collection, Ltd. v. W. Seventh*,
   812 F.2d 1215 (9th Cir. 1987).............................................................................10

26

*Russell v. Caesar*,
   62 U.S.P.Q.2d 1125 (N.D. Cal. 2001) ...............................................................19

27

28

iv

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3      *Steinway & Sons v. Robert Demars & Friends*,
        210 U.S.P.Q. 954 (C.D. Cal. 1981).......................................................................... 15
4
       *Teaching Co. Ltd. P'ship v. Unapix Entertainment, Inc.*,
5       87 F.Supp. 2d 567 (E.D. Va. 2000)......................................................................... 24

6      *Two Pesos, Inc. v. Taco Cabana, Inc.*,
        505 U.S. 763 (1992)............................................................................................ 10, 14
7
       *Washington Speakers Bureau, Inc. v. Leading Auth., Inc.*,
8       33 F. Supp. 2d 488 (E.D. Va. 1999)........................................................................ 17

9      **Statutes**

10     15 U.S.C. § 1051(b) ................................................................................................. 13

11     15 U.S.C. § 1065 .................................................................................................. 1, 12

12     15 U.S.C. § 1075(b) ................................................................................................. 11

13     15 U.S.C. § 1114(1) .................................................................................................... 3

14     15 U.S.C. § 1115(b) ............................................................................................. 12, 14

15     15 U.S.C. § 1125(a)(1)(A) ......................................................................................... 3

16     15 U.S.C. § 1127 ...................................................................................................... 14

17     18 U.S.C. § 1001 ...................................................................................................... 13

18     California Business and Professions Code
19      § 14335........................................................................................................................ 3

20     California Business and Professions Code
        § 17200........................................................................................................................ 3

21     Federal Rules of Civil Procedure
22      65................................................................................................................................ 10

23     **Other Authorities**

24     McCarthy J., *McCarthy on Trademarks and Unfair Competition (4th ed. 2007)*,
        § 23:20.50................................................................................................................... 15
25
       McCarthy J., *McCarthy on Trademarks and Unfair Competition (4th Ed. 2007)*,
26      § 24:45........................................................................................................................ 19

27

28

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1

## I.   **INTRODUCTION**

2     With full knowledge of the incontestable, federal trademark registration for SMOOTH

3 MOVE® that Traditional Medicinals, Inc. ("Traditional Medicinals") has long owned and used for

4 over three decades for self-care laxative products, Novartis Consumer Products, Inc. and Novartis

5 AG (collectively "Novartis") recently launched a competitive, so-called "NEW!" laxative product

6 bearing the confusingly similar SENNA SMOOTH designation.  Yet, the so-called "NEW!"

7 SENNA SMOOTH product essentially has the same active and inactive ingredients, and pricing

8 as the Ex-Lax products Novartis has long offered and sold in the marketplace.  The only features

9 of the product that can be characterized as even remotely "NEW!" are the brand Novartis chose

10 for the product and the packaging, which make it further appear that Novartis is offering a

11 product affiliated with Traditional Medicinals' SMOOTH MOVE® product.  Novartis' use of the

12 confusingly similar SENNA SMOOTH designation represents an attempt to trade on the goodwill

13 and reputation of the SMOOTH MOVE® mark by creating consumer confusion.

14     The undisputable facts establish that Novartis' applied-for and recently introduced

15 SENNA SMOOTH designation is likely to lead to consumer confusion with Traditional

16 Medicinals' longstanding SMOOTH MOVE® mark.  First, Traditional Medicinals has used its

17 SMOOTH MOVE® mark in commerce since 1976, and its mark has been federally registered

18 since 1983 for a laxative tea, and became incontestable in 1988 pursuant to 15 U.S.C. § 1065

19 (continuous use for five consecutive years subsequent to registration date confers incontestable

20 status).  Accordingly, the law entitles the SMOOTH MOVE® mark to strong protection and

21 immunizes it from any attack as descriptive, which in all events would be unjustified.  Second,

22 when Novartis AG filed its intent-to-use application for the confusingly similar SENNA

23 SMOOTH designation, trademark counsel at Novartis revealingly never bothered to advise the

24 United States Patent and Trademark Office ("USPTO") that Novartis AG intended to use its mark

25 for a product containing "senna" leaf extract or that "smooth" in any way described its product.

26 To the contrary, Novartis and its trademark counsel prosecuted its application for SENNA

27 SMOOTH through to publication without a disclaimer of the word "SMOOTH."  Significantly,

28 Novartis even highlights the word "smooth" on the packaging for its laxative product, with the

1

1   word "SMOOTH" appearing at least 25% larger on the packaging than the word "SENNA."

2   Indeed, based on its subsequent admission that SENNA is descriptive or generic for its product,

3   SMOOTH admittedly constitutes the dominant portion of its mark.  Moreover, although

4   Traditional Medicinals has been using and has had a federal registration for its mark for nearly a

5   quarter of a century, Novartis never raised, even though it has had the direct opportunity, any

6   purported descriptiveness objection or claim that Traditional Medicinals was trading-off of the

7   reputation of the Ex-Lax brand, which appears to be a defense only contrived for this proceeding.

8   Third, Novartis' SENNA SMOOTH senna-based laxative products compete with Traditional

9   Medicinals' SMOOTH MOVE® laxative products, many of which have used senna for decades.

10  These facts alone establish a likelihood of consumer confusion.

11      Based on its incontestable federally registered SMOOTH MOVE® mark, Traditional

12  Medicinals seeks a preliminary injunction to halt Novartis' production and sale of laxative

13  products bearing the confusingly similar SENNA SMOOTH designation.  Such immediate relief

14  is necessary to protect Traditional Medicinals' valuable goodwill developed in its SMOOTH

15  MOVE® mark, to prevent Traditional Medicinals from suffering irreparable harm during the

16  pendency of this litigation, and to prevent the likely confusion among consumers that will result

17  from Novartis' sale of laxative products using the confusingly similar SENNA SMOOTH

18  designation.

19      In this regard, Novartis cannot argue that it will suffer harm from this halt in the sale of

20  the SENNA SMOOTH product — the product only recently reached store shelves, it uses the

21  same formulation as its Ex-Lax products, and it sells for essentially the same price as its Ex-Lax

22  products that Novartis can continue to, and does, sell.  Thus, consumers will have access to

23  Novartis' products at the very same prices, but under the Ex-Lax mark, without the concern for

24  marketplace confusion and harm to consumers.

25      **II.    STATEMENT OF ISSUES**

26      This motion presents the following issues:

27      1.    Whether Traditional Medicinals is likely to succeed on the merits of its claim that

28  Novartis' ongoing conduct, including its promotion, marketing, production and sale of its

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1    SENNA SMOOTH laxative product, infringes Traditional Medicinals' federally registered and

2    incontestable SMOOTH MOVE® trademarks in violation of section 32(1) of the Lanham Act, 15

3    U.S.C. § 1114(1), and California Business and Professions Code § 14335.

4         2.    Whether Traditional Medicinals is likely to succeed on the merits of its claim that

5    Novartis' ongoing conduct, including its promotion, marketing, production and sale of its

6    SENNA SMOOTH product, constitutes a false designation of origin in violation of section

7    43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and California Business and

8    Professions Code § 17200.

9         **III.    STATEMENT OF FACTS**

10        Novartis' attempt to profit from and trade on the goodwill and reputation of Traditional

11   Medicinals' SMOOTH MOVE® federally registered and incontestable mark becomes self-evident

12   when you consider that Novartis (1) began using the designation SENNA SMOOTH® decades

13   after Traditional Medicinals began its use and registration of its SMOOTH MOVE® brand for

14   senna-based laxative products; (2) emphasizes and more prominently uses the word "SMOOTH"

15   on the packaging of its recently released SENNA SMOOTH laxative product over any other

16   wording on the packaging; and/or (3) uses packaging for its "NEW!" SENNA SMOOTH product

17   that utilizes a depiction of a senna plant in the lower right-hand corner of the product against a tri-

18   colored background, just as Traditional Medicinals' packaging displays a depiction of a senna

19   plant in the lower right-hand corner of the product packaging against a tri-colored background.

20   Novartis undertook these actions with full and first hand knowledge of Traditional Medicinals'

21   SMOOTH MOVE® products, which not only have a prominent position in the marketplace, but

22   one which Novartis at least as early as 2000 expressed preliminary interest in exploiting through a

23   business relationship.  Moreover, since Traditional Medicinals is likely to succeed on the merits,

24   it is presumed that it will suffer irreparable harm if injunctive relief is not granted.  Traditional

25   Medicinals' goodwill and brand recognition necessarily will be eroded if Novartis' infringement

26   does not cease.  Thus, the requisite elements for this Court to issue a preliminary injunction more

27   than exist.  Such an order will protect Traditional Medicinals' incontestable trademark rights and

28   the public, while minimally injuring Novartis, if at all, since its Ex-Lax products will continue to

be available in the marketplace at the same price and with the same active and inactive

ingredients as the newly branded SENNA SMOOTH product.

**A.    Traditional Medicinals' Distinctive SMOOTH MOVE® Marks and Established Business Reputation.**

Beginning more than three decades ago as a small business in Northern California, Traditional Medicinals began developing, marketing and selling herbal medicinal self-care products, including senna-based laxative products in a tea format under the mark SMOOTH MOVE®.  Declaration of Drake Sadler, dated May 29, 2007 ("Sadler Decl."), ¶¶ 2, 17.  Since 1974, Traditional Medicinals has acquired a long-standing reputation for its natural, high-quality products, including its herbal teas and other self-care products, including laxative products.  *Id.*, ¶¶ 2-3.  In January 1976, Traditional Medicinals first offered and sold its popular product, SMOOTH MOVE® laxative tea, in interstate commerce.  *Id.*, ¶ 4.  Over this more than thirty-year period, Traditional Medicinals' SMOOTH MOVE® mark has developed into a well-recognized identifier for Traditional Medicinals' high-quality, natural products.  *Id.*

The USPTO issued Registration No. 1,258,223 for the mark SMOOTH MOVE® on November 22, 1983.  *Id.*, ¶ 20, Exh. 7.  Since that date, the Registration has become incontestable.  Declaration of Sharon R. Smith, dated May 29, 2007 ("Smith Decl."), Exh. 15.  Similarly, the USPTO issued Registration No. 2,520,275 for the mark SMOOTH MOVE® on December 18, 2001.  Sadler Decl., ¶ 20, Exh. 8.  Since that date, the Registration has become incontestable.  Smith Decl., Exh. 16.  Further, on February 7, 2006, Traditional Medicinals filed an application for SMOOTH MOVE® to expand its use and protection for "anti-inflamatories; astringents for medicinal purposes; dietary supplements; hemorrhoid treatment preparations; herbal supplements; nutritional supplements; topical anesthetics; vasoconstrictors."  Sadler Decl., ¶ 21, Exh. 9.  That application has been allowed.  *Id.*

While Traditional Medicinals initially offered its SMOOTH MOVE® self-care laxative products in tea format, Traditional Medicinals expanded its range of laxative products to include capsules and powders as well.  Sadler Decl., ¶ 17.  In 2006, Traditional Medicinals began offering SMOOTH MOVE® SENNA products in capsule form in a tri-colored package

4

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

background featuring in the lower right hand corner a depiction of the senna plant.  *Id.*, ¶¶ 23-24. These products use standardized extract of the senna leaf organically grown.  *Id.*  In addition, in 2006, Traditional Medicinals began offering SMOOTH MOVE® FIBER products in capsule and powder form.  *Id.*, ¶ 17.  The SMOOTH MOVE® FIBER products utilize the psyllium plant, but, like its SMOOTH MOVE® SENNA packaging, they use the same tri-colored package background featuring a depiction of the psyllium plant in the lower right corner.  *Id.*, ¶ 34, Exh. 5. Sample packaging for Traditional Medicinals' SMOOTH MOVE® product offerings are as follows:




*Id.*

Consumers can purchase Traditional Medicinals' SMOOTH MOVE® senna-based and other natural self-care laxatives in independent grocery and chain natural foods stores, such as Whole Foods and Wild Oats.  Sadler Decl., ¶ 8.  SMOOTH MOVE® products also are available at approximately 10,000 grocery stores, including Safeway, Kroger, and Albertsons stores.  *Id.* Drug and pharmacy stores, including Rite Aid and CVS, also sell SMOOTH MOVE® self-care laxative products.  *Id.*  Over 20,000 health food, nutrition and vitamin stores sell SMOOTH MOVE® products, including about 4,000 General Nutrition Centers ("GNC").  *Id.*

In addition, consumers also can purchase Traditional Medicinals' SMOOTH MOVE® products at online stores, including Drugstore.com and Amazon.com, among others.  *Id.* Traditional Medicinals' web sites located at "traditionalmedicinals.com" and "tramed.com" feature its SMOOTH MOVE® products, and its SMOOTH MOVE ® products also can be purchased through referrals from its website and a toll free number.  *Id.,* ¶¶ 8, 16, Exh. 6.

1    Traditional Medicinals has sold more than 7,000,000 units of SMOOTH MOVE®

2    products, representing in excess of $30,000,000 in retail sales over the last six years.  *Id.*, ¶ 9.

3    Through word of mouth and overall reputation, as well as Traditional Medicinals' promotional

4    and marketing efforts, its SMOOTH MOVE® products have gained a strong reputation for high

5    quality.  *Id.*, ¶¶ 4, 10-16, 22, 35.

6                    **1.    Traditional Medicinals Has Widely Promoted Its SMOOTH MOVE®
                         Laxative Products.**

7

8    Traditional Medicinals has continuously and extensively used the SMOOTH MOVE®

9    mark in connection with its senna-based and other self-care laxative products in advertising and

10   promotional materials.  Sadler Decl., ¶ 7.  Traditional Medicinals' advertising, marketing and

11   promotional expenditures for its SMOOTH MOVE® products reached $220,000 in 2006 for its

12   SMOOTH MOVE® products alone.  *Id.*, ¶ 14.  Traditional Medicinals has distributed newsletters

13   to its customers, as well as promotional materials inside its product packaging.  *Id.*, ¶ 11, Exh. 3.

14   For example, during 2006, Traditional Medicinals provided more than 1.5 million coupons to

15   consumers for its SMOOTH MOVE® laxative tea products.  *Id.*, ¶ 11, Exh. 4.

16                   **a)    *SMOOTH MOVE® Products Have Been Featured in National
                         Publications and Media.***

17

18   Traditional Medicinals' promotional campaigns for its SMOOTH MOVE® products

19   include advertisements, promotions and/or features in national publications, such as *O Magazine*,

20   *The Washington Post*, *The Star–Ledger*, *Natural Health*, *Organic Style, Environmental Nutrition*,

21   *The News–Press*, *the Natural Foods Merchandiser*, and *Let's Live* (GNC's publication), and

22   customer publications from Whole Foods, Wild Oats, and Safeway.  *Id.*, ¶ 10, Exh. 2.

23   SMOOTH MOVE® products also have been featured in popular television programs, such

24   as "Live with Regis and Kathie Lee" and "The Discovery Channel."  *Id.*, ¶ 13.  The nationally

25   released movie "Employee of the Month" also referenced Traditional Medicinals' SMOOTH

26   MOVE® self-care laxative products.  *Id.*

27                   **b)    *SMOOTH MOVE® Products Have Been Featured at Trade Shows.***

28   Traditional Medicinals also has promoted its laxatives bearing the SMOOTH MOVE®

1-SF/7552751.3                                6                MEMO OF POINTS AND AUTHORITIES ISO
                                                              P'S MOTION FOR PRELIM. INJUNCTION
                                                              (4 07–CV–02457–SBA)

mark at trade shows, including the following recent shows: Natural Products Expo East, October 4-7, 2006, with over 23,000 attendees and 13,000 retail buyers; Kosherfest New York City, November 14–15, 2006, with over 6,000 retail buyers; and Natural Products Expo West, March 9–11, 2007, with approximately 47,000 attendees. *Id.*, ¶ 15.

### 2. SMOOTH MOVE® Products Are Competitively Priced.

The typical list prices for SMOOTH MOVE® products range from less than $6 for SMOOTH MOVE® tea to $17.95 for SMOOTH MOVE® FIBER products. *Id.*, ¶ 18. And, the suggested list price for SMOOTH MOVE® SENNA capsules is $14.95. *Id.*

### B. Novartis Only Recently Began Use of the SENNA SMOOTH Designation for a Laxative Product.

In contrast to Traditional Medicinals' longstanding sale of its SMOOTH MOVE® laxative products, Novartis only recently began selling any SENNA SMOOTH products in the United States. Sadler Decl., ¶ 26. Like the SMOOTH MOVE® packaging, Novartis' SENNA SMOOTH packaging uses a tri-colored background, with a depiction of a senna plant in the lower right corner. *Id.*, ¶¶ 26-27. Novartis' packaging appears in the marketplace as follows:



Before Novartis began selling its SENNA SMOOTH product, Novartis unquestionably knew of Traditional Medicinals' SMOOTH MOVE® products and federally registered mark. Sadler Decl., ¶ 30. In fact, in 2000, Novartis approached Traditional Medicinals to discuss a business relationship whereby Traditional Medicinals would supply herbal supplements to Novartis, including its SMOOTH MOVE® senna-based laxative formulations. *Id*. Although Traditional Medicinals decided not to pursue the relationship, as part of the parties' explorations,

1    Novartis clearly knew of, respected, and appeared interested in Traditional Medicinals' products

2    and high-quality ingredients, including its SMOOTH MOVE® products.  *Id.*, ¶ 30, Exh. 10 (10–

3    year Confidentiality Agreement).

4        Notwithstanding Novartis' express knowledge of Traditional Medicinals and its successful

5    SMOOTH MOVE® laxative products at least as early as 2000, Novartis sought a trademark

6    registration for the confusingly similar SENNA SMOOTH designation by way of an intent-to-use

7    application in September 2006.  Smith Decl., Exh. 1.  The USPTO published that application on

8    February 6, 2007.  Sadler Decl., ¶ 25.  Traditional Medicinals promptly opposed that application

9    on February 16, 2007.  *Id.*  Yet, Novartis continued with its product launch and recently began

10   selling SENNA SMOOTH senna-based laxative pills at drug stores, online and at supermarkets,

11   in some of the same online and retail outlets where Traditional Medicinals' SMOOTH MOVE®

12   SENNA capsules are sold.  Smith Decl., Exh. 12; Sadler Decl., ¶ 26.

13       In connection with its application, Novartis AG swore through its in-house "global"

14   trademark counsel under penalty of perjury that the applied-for mark was entitled to registration.

15   Smith Decl., Exh. 1.  In response to the Examining Attorney's well-founded objection, Novartis

16   disclaimed the word "senna" as descriptive or generic, since its anticipated laxative product

17   admittedly contained senna leaf extract.  *Id.*, Exh. 2.  Novartis, however, *never* revealed to the

18   Examining Attorney that it considered "smooth" to be descriptive as well.  *Id.*  If it had

19   disclaimed the word "smooth," its applied-for mark, of course, would *not* have been registerable.[1]

20       Traditional Medicinals first became aware of Novartis' intent to utilize the SENNA

21   SMOOTH designation for a competitive or related product when the USPTO published Novartis'

22   trademark application.  Sadler Decl., ¶ 25.  As noted above, Traditional Medicinals promptly filed

23   a notice of opposition (Opp. No. 91,175,734), alleging that use of the SENNA SMOOTH

24   designation is likely to cause confusion and dilution.  Smith Decl., Exh. 4.  In response, Novartis

25   denied the material allegations, but asserted no affirmative defenses that Traditional Medicinals'

26   mark somehow was descriptive, not protectable or copied from Ex-Lax.  *Id.*, Exh. 5.

27   _____

[1] *See Dena Corp. v. Belvedere Int'l., Inc.*, 950 F.2d 1555, 1560 (Fed. Cir. 1991) (a mark that must
be entirely disclaimed is nonregistrable); 15 U.S.C. § 1056(a).

28

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1       Until late April 2007, Traditional Medicinals did not come across the product in the

2   marketplace.  Sadler Decl., ¶ 26.  Until that time, Traditional Medicinals only knew that Novartis

3   sold laxative products using the Ex-Lax and/or GENTLE NATURE brands.  Sadler Decl., ¶¶ 26,

4   28-29.  Revealingly, the formulations of Novartis' Ex-Lax and GENTLE NATURE brand

5   products appear to contain the same ingredients and formulation as its SENNA SMOOTH

6   product, and SENNA SMOOTH sells for the same amount as Ex-Lax.  Sadler Decl., ¶¶ 28-29;

7   Smith Decl., Exh. 12.  Nonetheless, the packaging for SENNA SMOOTH misleadingly bears the

8   word "NEW!"  Sadler Decl., ¶ 27.  Also revealingly, the packaging for the SENNA SMOOTH

9   product features a senna plant in the lower right corner akin to the depiction of the senna plant

10  that Traditional Medicinals' features on its products.  *Id.*, ¶¶ 26-27.  Accordingly, all that appears

11  to be "NEW!" about Novartis' recently branded product is the name and packaging, which have

12  been designed to trade on the reputation, goodwill and increasing market share of the SMOOTH

13  MOVE® products.  *Id.*, ¶¶ 26-29, 34.

14       **C.      Status of Proceedings**

15       After discovering that Novartis commenced sales of its senna-based laxative product

16  under the SENNA SMOOTH brand, Traditional Medicinals promptly sent Novartis a letter

17  enclosing a courtesy copy of the Complaint.  Smith Decl., Exh. 6.  After exchanging letters with

18  counsel for Novartis Consumer Health, Inc., Traditional Medicinals had no recourse but to file

19  this Motion when its efforts did not result in a satisfactory resolution.[2]  *Id.*, ¶¶ 7-10, Exhs. 6–10.

20  Novartis has not been willing simply to cease selling its SENNA SMOOTH product.  *Id.*[3]

21  _____

22  [2]Novartis' most recent proposal would not allay the irreparable harm Traditional Medicinals is
    suffering as a result of Novartis' infringing conduct.  Novartis wants to wait until September 2007
23  to cease selling its SENNA SMOOTH products, to allow its SENNA SMOOTH products to
    remain on store shelves indefinitely, and to be able to sell its infringing SENNA SMOOTH
    through liquidators and discounters.  *See* Smith Decl., Exh. 10.  This proposal hardly moots the
24  issues presented in this motion.  *See E. & J. Gallo Winery v. Consorzio Del Gallo Nero*, 782 F.
    Supp. 457, 468 (N.D. Cal. 1991) (even voluntary discontinuance of use of infringing mark did not
25  moot motion for preliminary injunction).

26  [3] Counsel for Novartis Health, Inc. accepted service on behalf of Novartis Consumer Health, Inc.
    but not on behalf of Novartis, AG, the applicant for the mark.  Smith Decl., ¶ 10, Exh.  9.
27  Novartis AG, however, owns the pending application for SENNA SMOOTH that was filed by an
    in-house attorney for "Novartis," with an address in New Jersey.  *Id.*, Exh. 1.  Importantly, the
28  product in the marketplace, the sale of which Traditional Medicinals seeks to enjoin, identifies
    *Cont'd.*

1

## IV.    ARGUMENT

2    To be entitled to a preliminary injunction, Traditional Medicinals must show either (1) a

3    combination of probable success on the merits and the possibility of irreparable harm, or (2) that

4    serious questions are raised and the balance of hardships tips sharply in its favor.  *Metro Pub.,*

5    *Ltd. v. San Jose Mercury News*, 987 F.2d 637, 639 (9th Cir. 1993).  Under either standard,

6    Traditional Medicinals should be afforded preliminary injunctive relief.

7
          **A.    Traditional Medicinals' Well-Established Rights More Than Satisfy the Ninth
                   Circuit's Standard for Preliminary Injunctive Relief.**
8

9    With this motion, Traditional Medicinals establishes that it will prevail on its trademark

10   infringement and unfair competition claims because Novartis' use of the confusingly similar

11   SMOOTH SENNA designation is likely to cause confusion among typical consumers as to the

12   source, sponsorship, association or endorsement of its competitive laxative product.  The

13   Supreme Court has stated that: "the ultimate test is whether the public is likely to be deceived or

14   confused by the similarity of the marks…Whether we call the violation infringement, unfair

15   competition or false designation of origin, the test is identical—is there a 'likelihood of

16   confusion?'"  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (citations omitted).

17   The Court is authorized to issue a preliminary injunction under the circumstances of this

18   case.  Fed. R. Civ. P. 65.  A plaintiff in a trademark and/or unfair competition case is entitled to

19   such injunctive relief when it demonstrates either (1) a combination of probable success on the

20   merits and the possibility of irreparable injury, or (2) the existence of serious questions going to

21   the merits and that the balance of hardships tips sharply in its favor.  *GoTo.com, Inc. v. Walt*

22   *Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000).  These formulations are not different tests

23   but, rather, represent "a continuum in which the required showing of harm varies inversely with

24   the required showing of meritoriousness."  *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d

25   1215, 1217 (9th Cir. 1987) (citations omitted).  If, as here, the plaintiff demonstrates a likelihood

26

27   Novartis Consumer Health, Inc. as the supplier.  Although Novartis Consumer Health, Inc.
     appears to be a wholly owned subsidiary of Novartis AG, counsel for Novartis Consumer Health
28   would not accept service for Novartis AG.

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

of success on the merits of its trademark infringement claim, irreparable injury is presumed. *GoTo.com*, 202 F.3d at 1205 n4.  "This presumption effectively conflates the dual inquiries of this prong into the single question of whether the plaintiff has shown a likelihood of success on the merits."  *Id.*  Accordingly, a plaintiff in a trademark and/or unfair competition case is entitled to a preliminary injunction if it demonstrates a likelihood of confusion.  *Id.* at 1205 n.5.

Moreover, in cases involving the public interest, including claims under the Lanham Act, courts also must examine whether the public interest favors the plaintiff.  *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004).  Indeed, "[c]ourts in trademark infringement cases have a duty to protect both the private right of the trademark owner and the right of the public to be free from confusion, deception and mistake."  *Jockey Int'l, Inc. v. Burkard*, 185 U.S.P.Q. 201, 207 (S.D. Cal. 1975).  Applying these principles to the record here, both the facts and the equities support the issuance of a preliminary injunction to protect Traditional Medicinals and the public from Novartis' infringing and misleading conduct.

**B.      Traditional Medicinals Has Longstanding Trademark Rights that Demonstrate that It Will Likely Succeed on the Merits.**

Traditional Medicinals will succeed on its trademark and unfair competition claims by demonstrating that it has a valid trademark in its longstanding SMOOTH MOVE® brand and that Novartis' use of the confusingly similar SMOOTH SENNA mark and packaging are likely to cause consumer confusion as to the source, association, affiliation or sponsorship of its competitive laxative product.  *See Brookfield Comms., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999); *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 351-52 (9th Cir. 1980) (California law is at least as strict as federal law).  On the basis of this showing alone, this case warrants the issuance of a preliminary injunction.

**1.      Traditional Medicinals' SMOOTH MOVE® Mark Is Not Only Valid, It Is Incontestable and Entitled to Strong Protection.**

Traditional Medicinals' incontestable federal registrations for its SMOOTH MOVE® mark more than satisfy the first element of the likelihood of confusion inquiry.  *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark … shall be prima facie evidence of the validity

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

of the registered mark … and of the registrant's exclusive right to use the mark in commerce

…").  As Novartis knew, or should have known, well before adopting its confusingly similar

SENNA SMOOTH mark, Traditional Medicinals owns and uses incontestable federal

registrations for its well-known SMOOTH MOVE® brand:

- U.S. Registration No. 1,258,223, registered on November 22, 1983, for "herbal teas for use as a laxative;" and,

- U.S. Registration No. 2,520,275, registered on December 18, 2001, for "medicinal herb teas; herb tea for food purposes."

Sadler Decl., ¶ 20, Exhs. 7-8.  These registrations became incontestable in 1988 and 2006,

respectively.  Smith Dec., Exhs. 15-16; 15 U.S.C. § 1065 (continuous use for five consecutive

years subsequent to the registration date confers incontestable status).  As a result of their status

of incontestability, these registrations constitute "*conclusive* evidence of the validity of the

registered mark … and of the registrant's *exclusive* right to use the registered mark in commerce."

15 U.S.C. § 1115(b) (emphasis added).[4]

In addition to its incontestable federal registrations, Traditional Medicinals' continuous

and substantially exclusive use of its SMOOTH MOVE® brand, for its natural, self-care laxative

products offered in tea, capsule and powder form, more than establish the validity of Traditional

Medicinals' SMOOTH MOVE® mark.  Sadler Decl., ¶¶ 2, 17, 22-23.  Traditional Medicinals

began selling its herbal tea for use as a laxative in 1974, and in interstate commerce in 1976.  *Id.*,

¶¶ 2-4.  Traditional Medicinals also uses its SMOOTH MOVE® SENNA mark for its senna

laxative products offered in capsules, as well as its SMOOTH MOVE® FIBER brand for its

psyllium laxative product in capsule and powder format.  *Id.*, ¶ 17.  In fiscal year 2006 alone,

Traditional Medicinals' SMOOTH MOVE® laxative products garnered retail sales worth nearly

$6.5 million.  *Id.*, ¶ 9.  These facts not only demonstrate the source identifying nature of

---

[4] Traditional Medicinals owns a federal trademark application for its SMOOTH MOVE mark (Ser. No. 78/809,216) for "anti-inflamatories; astringents for medicinal purposes; dietary supplements; hemorrhoid treatment preparations; herbal supplements; nutritional supplements; topical anesthetics; vasoconstrictors."  Sadler Decl., Exh. 9.  That application has an effective date of February 7, 2006.  *Id.*  Traditional Medicinals' effective date falls at least 7 months earlier than the SENNA SMOOTH intent-to-use application.  *Compare* Sadler Decl., Exh. 9 and Smith Decl., Exh. 1.  Moreover, the USPTO has issued a notice of allowance for Traditional Medicinals' application.  Sadler Decl., ¶ 21, Exh. 9.

1    Traditional Medicinals' SMOOTH MOVE® brand, but they also establish the marketplace

2    presence and commercial success the SMOOTH MOVE® products enjoy.

3         Novartis' only response to the evidence of the validity and strength of the SMOOTH

4    MOVE® brand, including the SMOOTH MOVE® SENNA mark, for Traditional Medicinals'

5    natural, self-care laxative products appears to rest on the recently contrived arguments that the

6    SMOOTH portion of the long-used SMOOTH MOVE® mark somehow describes laxatives and

7    derives from the Ex-Lax product.  Smith Decl., Exhs. 7, 10.  These arguments, however, cannot

8    withstand scrutiny.

9         First, Novartis itself filed a trademark application *under penalty of perjury* for its SENNA

10   SMOOTH mark for its competitive laxative products without any indication to the USPTO that

11   the word SMOOTH functions as a descriptor.[5]  *Id.*, Exhs. 1-2.  Indeed, while Novartis disclaimed

12   the SENNA wording of its SENNA SMOOTH mark in its application, it has made no attempt to

13   disavow the distinctiveness of the SMOOTH wording of its applied-for designation.  *Id.*  By

14   failing to inform the USPTO of the purportedly descriptive nature of the SMOOTH wording in its

15   mark, Novartis represented in effect *under penalty of perjury* to the Trademark Office that

16   SMOOTH does not describe laxatives.[6]  Novartis' representation either constitutes an admission

17   that SMOOTH is sufficiently distinct for laxative products or a fraud on the Trademark Office.

18   _____

19   [5] Given the disclaimer of "Senna," SMOOTH only serves as the dominant portion of Novartis'
     recently launched brand.  Moreover, the word "SMOOTH" is prominently featured on Novartis'
20   packaging, which confirms its dominance. Sadler Decl., ¶¶ 26-27.

21   [6] Novartis' in-house trademark counsel swore that she understood that "willful false statements
     and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section
     1001, and that such willful false statements, and the like, may jeopardize the validity of the
22   application or any resulting registration, declares that he/she is properly authorized to execute this
     application on behalf of the applicant; he/she believes the applicant to be the owner of the
23   trademark/service mark sought to be registered, or, if the application is being filed under 15
     U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to
24   the best of his/her knowledge and belief no other person, firm, corporation, or association has the
     right to use the mark in commerce, either in the identical form thereof or in such near
25   resemblance thereto as to be likely, when used on or in connection with the goods/services of
     such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements
26   made of his/her own knowledge are true; and that all statements made on information and belief
     are believed to be true."  Smith Decl., Exh. 1.

27

28

1   *See Daesang Corp. v. Rhee Bros., Inc.*, 77 U.S.P.Q.2d 1753, 1760-62 (D. Md. 2005) (failure to

2   disclose geographic meaning of term held material to application and constituted fraud).  Under

3   either scenario, Novartis' after–the–fact attempt to justify its knowing adoption of a confusingly

4   similar mark for its competitive laxative product should be given no weight.

5         Second, the Supreme Court more than twenty (20) years ago in *Park 'N Fly, Inc. v. Dollar*

6   *Park and Fly, Inc.*, 469 U.S. 189, 196-97 (1985), dispositively held that an incontestable

7   trademark cannot be challenged as descriptive.  469 U.S. at 205 ("[T]he holder of a registered

8   mark may rely on incontestability to enjoin infringement and … such an action may not be

9   defended on the grounds that the mark is merely descriptive."); *see Entrepreneur Media, Inc. v.*

10  *Smith*, 279 F.3d 1135, 1142 n3 (9th Cir. 2002) (Under *Park 'N Fly*, a defendant cannot defend on

11  the ground that the mark is descriptive, lacks secondary meaning and "thus entitled to no

12  trademark protection at all.");  15 U.S.C. § 1115(b).  Rather, Traditional Medicinals' federally

13  registered and incontestable SMOOTH MOVE® mark is entitled to the utmost protection under

14  the trademark laws.  *See E. & J. Gallo Winery*, 782 F. Supp. at 462, quoting *Lois Sportswear*

15  *USA, Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir. 1986) ("A registered mark … 'should

16  be afforded the utmost protection.'").  Whether based upon its incontestable registrations or its

17  longstanding and continuous use, there can be no question that this court should afford

18  Traditional Medicinals' SMOOTH MOVE® mark validity and strong protection.

19        **2.**    **Novartis' Confusingly Similar SENNA SMOOTH Designation is Likely**
    **to Cause Consumer Confusion with the Longstanding SMOOTH**

20                **MOVE® Mark, Particularly for a Competitive Product.**

21        Congress' intent with the Lanham Act was to make "actionable the deceptive and

22  misleading use of marks" and "to protect persons engaged in … commerce against unfair

23  competition." *Two Pesos*, 505 U.S. at 767-68 (quoting 15 U.S.C. § 1127); *McLean v. Fleming*,

24  96 U.S. 245, 255  (1877) ("Where the similarity is sufficient to convey a false impression to the

25  public mind, and is of a character to mislead and deceive the ordinary purchasers in the exercise

26  of ordinary care and caution in such matters, it is sufficient to give the injured party the right to

27  redress.").  Thus, likelihood of confusion stands at the core of trademark infringement.

28  *GoTo.com,* 202 F.3d at 1205.  A likelihood of confusion exists "when consumers viewing the

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1   mark would probably assume that the product or service it represents is associated with the source

2   of a different product or service identified by a similar mark." *Alpha Industries v. Alpha Steel*

3   *Tube & Shapes,* 616 F.2d 440, 443 (9th Cir. 1980) (citations omitted).

4        In determining likelihood of confusion, the Ninth Circuit evaluates the eight *Sleekcraft*

5   factors: (1) the similarity of the marks; (2) the competitive or relatedness of the goods; (3) the

6   channels of trade used; (4) the strength of the mark; (5) evidence of actual confusion; (6) the

7   types of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's

8   intent in selecting the mark; and (8) the likelihood of expansion of product lines.  *GoTo.com*, 202

9   F.3d at 1205.  Courts do not rigidly weigh these factors, and "no single factor is determinative."

10  *GoTo.com*, 202 F.3d at 1205-6; *Steinway & Sons v. Robert Demars & Friends*, 210 U.S.P.Q. 954,

11  965 (C.D. Cal. 1981).  Nevertheless, certain factors — such as the similarity of the marks and

12  whether the two companies directly compete — always will be of critical import.  *Brookfield*, 174

13  F.3d at 1054.  Here, these and other of the *Sleekcraft* factors overwhelmingly weigh in favor of

14  finding that Novartis' use of the substantially similar trademark — SENNA SMOOTH — creates

15  a likelihood of consumer confusion.

16              **a)    *SMOOTH MOVE*® and SENNA SMOOTH Stand as Confusingly**
                        ***Similar Marks.*[7]**

17

18        It is well-recognized that "[t]he degree of similarity of the marks needed to prove likely

19  confusion will vary with the differences in the goods and services of the parties."  McCarthy J.,

20  *McCarthy on Trademarks and Unfair Competition*, § 23:20.50 (4th ed. 2007).  Stated another

21  way:

22              [w]here the goods and services are directly competitive, the degree
                of similarity required to prove likelihood of confusion is less than
23              in the case of dissimilar products…. Conversely, the greater the
                similarity in the marks, the lesser the similarity required in the
24              goods or services of the parties to support a finding of likely
                confusion.
25

26  ───────────────
    [7] Counsel for Novartis itself has confirmed how easily the brands can be confused, when he
    recently wrote "Novartis would discontinue production of further SMOOTH MOVE®
27  products…."  Smith Decl., Exh. 10.  Of course, Novartis does not produce SMOOTH MOVE®
    products, Traditional Medicinals does.
28

MEMO OF POINTS AND AUTHORITIES ISO
                                              P'S MOTION FOR PRELIM. INJUNCTION
                                              (4 07–CV–02457–SBA)

1   *Id.*  In this case, the similarity in the trademarks and the competitive nature of the goods both

2   exist, so the degree of similarity needed for a finding of likelihood of confusion is less.

3        Courts have established three basic principles for comparing the similarity of marks:

4   (1) the marks must be considered in their entirety as they appear in the marketplace; (2) the

5   similarity of the marks must be judged in terms of sight, sound and meaning; and (3) the

6   similarities in the marks must be weighed more heavily than the differences.  *GoTo.com*, 202 F.3d

7   at 1206.  Based upon these principles, the SENNA SMOOTH designation must be considered

8   identical to the SMOOTH MOVE® and SMOOTH MOVE® SENNA marks.

9        Under any analysis, SMOOTH represents the dominant portion of Novartis' designation.

10   In its application before the USPTO, the word SENNA had to be disclaimed because it describes

11   an ingredient of Novartis' laxative product.  Smith Decl., Exh. 2.  Where, as here, "one portion of

12   a composite mark is a descriptive or generic word, that feature of the mark may be of less

13   significance in designating a source of origin."  *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717

14   F.2d 352, 356 (7th Cir. 1983); *Pizzeria Uno Corp. v. Temple*, 747, F.2d 1522, 1530 (4th Cir.

15   1984) ("Such is merely the application of the rule that a descriptive word can never constitute the

16   dominant part of a mark.").  In contrast, counsel for Novartis swore under penalty of perjury that

17   the word SMOOTH did not describe Novartis' laxative product.  Smith Decl., Exh. 1.  Thus, the

18   word SMOOTH forms the dominant part of the SENNA SMOOTH designation.

19        Novartis' packaging further demonstrates that SMOOTH is the dominant element of the

20   SENNA SMOOTH mark for its senna-based laxative product.  Sadler Decl., ¶¶ 26-27.  In terms

21   of size, the SMOOTH wording is the largest element on Novartis' packaging, appearing in

22   lettering that is considerably larger than any other word on the box (including the "ex-lax"

23   wording that is approximately one-eighth the size of the SMOOTH wording).  *Id.*; *see Pizzeria*

24   *Uno Corp.*, 747 F.2d at 1530 (holding that a disclaimed word that appears in smaller letters

25   cannot be considered the dominant part of the mark).  The SMOOTH wording is also featured on

26   the top part of the box in a bright blue color contrasted against the white portion of the box, which

27   further draws emphasis to the wording.  Sadler Decl., ¶¶ 26-27.

28

       16      MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1    Focusing on the dominant element of Novartis' mark — SMOOTH — in comparison to

2    Traditional Medicinals' SMOOTH MOVE® mark, the marks should be considered identical or at

3    the very least nearly identical.  *Hewlett-Packard Co. v. Packard Press, Inc*., 281 F.3d 1261, 1266

4    (Fed. Cir. 2002) (affirming likelihood of confusion on the grounds that PACKARD is the

5    dominant and distinguishing factor of HEWLETT PACKARD and PACKARD TECHNOLOGY

6    marks); *G. D. Searle & Co. v. MDX Purity Pharmacies, Inc*., 275 F.Supp. 524 (C.D. Cal. 1967)

7    (MUCILIN for laxative likely to cause confusion with METAMUCIL for laxative).

8    Even affording equal weight to the descriptive SENNA portion of Novartis' mark,

9    SENNA SMOOTH conveys the same overall commercial impression as the SMOOTH MOVE®

10   brand, particularly including the SMOOTH MOVE® SENNA mark.  *Washington Speakers*

11   *Bureau, Inc. v. Leading Auth., Inc.*, 33 F. Supp. 2d 488, 497 (E.D. Va. 1999), *aff'd* 217 F.3d 843

12   (4th Cir. 2000) ("[A]bsolute identity is not necessary for infringement; all that is necessary is

13   enough similarity between the marks to confuse consumers.").  The packaging for both products

14   identifies that they are senna-based products, both prominently using the word SENNA and

15   images of the senna plant located in the lower right corner of the box.  Sadler Decl., ¶¶ 23-24, 26-

16   27.  Moreover, Traditional Medicinals offered its SMOOTH MOVE® senna-based products,

17   including its SMOOTH MOVE® SENNA product, and its packaging before Novartis.  *Id.*, ¶¶ 4,

18   17, 23, 26.  Under these circumstances, Novartis' SENNA SMOOTH mark must be found

19   sufficiently similar to the SMOOTH MOVE® mark to create a likelihood of consumer confusion.

20              **b)**      ***The Products Offered Compete in the Marketplace.***

21   It is well-established that the likelihood of confusion is much greater when the products at

22   issue compete.  *See, e.g., Nikon, Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2nd Cir. 1993).  The Ninth

23   Circuit has stated that "[w]hen the goods produced by the alleged infringer compete for sales with

24   those of the trademark owner, infringement usually will be found if the marks are sufficiently

25   similar that confusion can be expected."  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th

26   Cir. 1979).  Goods compete if they "serve the same purposes, fall within the same class, or are

27   used for similar purposes."  *Nikon,* 987 F.2d at 95.

28   Here, Novartis' senna-based laxative products offered under the confusingly similar

17          MEMO OF POINTS AND AUTHORITIES ISO
                                                                P'S MOTION FOR PRELIM. INJUNCTION
                                                                (4 07–CV–02457–SBA)

1   SENNA SMOOTH designation compete with Traditional Medicinals' SMOOTH MOVE®

2   laxative products, regardless of form — tea, capsules or powder.  All of Traditional Medicinals'

3   SMOOTH MOVE® products serve as self-care laxative remedies, and many are senna-based

4   products.  Sadler Decl., ¶¶ 4, 7, 17, 22-23.  In particular, the SMOOTH MOVE® SENNA product

5   comes in capsule form and Novartis' SENNA SMOOTH product comes in pill form.  *Id.*,

6   ¶¶ 17, 26.  Consumers have long bought Traditional Medicinals' SMOOTH MOVE® senna tea as

7   a self-care laxative, thus it has long competed with Novartis' laxative products and now with the

8   recently branded SENNA SMOOTH product.  *Id.*, 4, 17, 34.  Regardless of form, these products

9   serve the same function for consumers.  The products also sell for comparable prices — SENNA

10  SMOOTH products sell for approximately $8.54 for 24 pills, and SMOOTH MOVE® SENNA

11  products sell for approximately $14.95 for 50 pills.  Sadler Decl., ¶ 18; Smith Decl., Exhs. 11-12.

12          In addition, with its new packaging prominently displaying the senna plant, its claim of

13  "Natural Senna Ingredient," and with SMOOTH appearing as the largest element, Novartis

14  seemingly is trying to re-position its laxative product under the SENNA SMOOTH mark as

15  natural products akin to those Traditional Medicinals long has sold.  Sadler Decl., ¶¶ 26-29, 34.

16  Otherwise, why would Novartis introduce a product with essentially the same formula and at the

17  same price as its Ex-Lax brand, but under a brand dominated by the word "SMOOTH" and

18  featuring a depiction of a senna plant along with the word "natural"?

19          Thus, this factor weighs heavily in favor of confusion.

20                  **c)**      ***SENNA SMOOTH and SMOOTH MOVE® and SMOOTH MOVE®***
                            ***SENNA Products Travel in the Same Channels of Trade.***
21

22          Convergent marketing and sales channels increase the likelihood of confusion.  *Sleekcraft*,

23  599 F.2d at 353.  Traditional Medicinals sells its SMOOTH MOVE® self-care laxative products

24  through all types of retailers — grocery, drug stores, natural food, specialty and online stores,

25  including some of the same stores where Novartis' SENNA SMOOTH self-care laxative products

26  recently have been introduced.  Sadler Decl., ¶¶ 18, 26.  By way of example, SENNA SMOOTH

27  laxative products and SMOOTH MOVE® laxative products both can be purchased at nationwide

28  brick and mortar stores, such as Safeway and Albertsons, as well as online retailers, such as

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1   Drugstore.com and Amazon.com.  *Id.*

2          Although not necessary for a likelihood of confusion finding, the competitive SENNA

3   SMOOTH and SMOOTH MOVE® SENNA self-care laxative products also can be found on the

4   shelf area in effect "side–by–side" in certain retail stores and online retailers, such as

5   Drugstore.com.  Smith Decl., Exhs. 12-13; *McCarthy*, § 24:45 ("If both plaintiff's and

6   defendant's goods are sold nearby in the same store, this tends to increase the likelihood that

7   buyers will think the goods come from the same source …").  Thus, the products at issue here

8   compete and use overlapping retail channels, which weigh heavily in Traditional Medicinals'

9   favor.

10              **d)     *The SMOOTH MOVE® and SMOOTH MOVE® SENNA Marks***

11                            ***Continue to be Distinctive.***

12          Distinctive marks are entitled to the "widest ambit of protection from infringing uses."

13  *Ocean Garden, Inc. v. Marktrade Co.*, Inc., 953 F.2d 500, 506 (9th Cir. 1991).  In determining

14  distinctiveness, courts look to the degree to which the consuming public associates the mark with

15  the particular source.  *Russell v. Caesar*, 62 U.S.P.Q.2d 1125, 1128 (N.D. Cal. 2001).  The

16  distinctiveness of a mark can be strengthened by, among other things, "extensive advertising,

17  length of time in business, public recognition, and uniqueness."  *Century 21 Real Estate Corp. v.*

18  *Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988); *Ocean Garden*, 953 F.2d at 506 ("OGP has done

19  extensive advertising, and has used the mark for thirty years, which strengthens OGP's mark.").

20  Here, the SMOOTH MOVE® mark constitutes Traditional Medicinals' signature product line,

21  which has been used for a laxative product for over three decades.

22          Traditional Medicinals has developed exceptionally strong customer goodwill and

23  customer recognition in its SMOOTH MOVE® brand.  In its addition to its more than thirty (30)

24  years of use of its SMOOTH MOVE® mark for its senna-based and other self-care laxative

25  products, Traditional Medicinals spent in 2006 alone more than $ 220,000 in 2006 in advertising,

26  marketing, and promoting only its SMOOTH MOVE® products.  Sadler Decl., ¶ 14.  Traditional

27  Medicinals' SMOOTH MOVE® products have been featured in a wide array of publications, on

28  national television programming and in the recent "Employee of the Month" movie.  *Id.*, ¶¶ 13-

1    14.  Retail sales for Traditional Medicinals' SMOOTH MOVE® products total more than

2    $6.5 million annually.  *Id.*¶ 9.  These facts evidence the strong recognition the SMOOTH

3    MOVE® brand enjoys in the marketplace.  In fact, leading market reports show that SMOOTH

4    MOVE® tea products outsell Novartis' 18 and 24 pill count Ex-Lax products in unit sales in

5    grocery stores in the United States.  *Id.*, ¶ 5, Exh. 1.

6          Furthermore, until Novartis' recent introduction of its SENNA SMOOTH product, the

7    SMOOTH MOVE® brand had been the only laxative product to use the word SMOOTH as part

8    of its brand name.[8]  *Pizzeria Uno Corp.*, 747 F.2d at 1533 (finding mark suggestive because there

9    was "no extensive use of the word as either a trademark or trade name"); *Dictaphone Corp. v.*

10   *Dictamatic Corp.*, 199 U.S.P.Q. 437, 443 (D. Or. 1978) ("Since no one else uses a similar

11   sounding name, plaintiff's name looks and sounds are the more unique."); *see* Sadler Decl., ¶ 32;

12   Smith Decl., Exh. 13.  For these reasons, as well, the strength of Traditional Medicinals'

13   SMOOTH MOVE® mark weighs heavily in favor of finding a likelihood of confusion.

14                    **e)      *Lack of Actual Confusion Should Not Be a Factor, Since Novartis***
                                ***Only Recently Introduced Its Product.***
15

16         Courts recognize that the absence of actual confusion is not determinative of likely

17   confusion as it is unlikely that plaintiff would know of any actual confusion.  *Brookfield*, 174

18   F.3d at 1050; *Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir.

19   2006) (given national market and low degree of consumer care for inexpensive accessories, lack

20   of actual confusion evidence not noteworthy).  Moreover, given that Novartis only began to sell

21   its SENNA SMOOTH product recently, it is not likely that Traditional Medicinals would have

22   learned of any consumer confusion in this short time period.  Thus, this factor does not weigh in

23   favor of either party considering that Novartis did not launch the SENNA SMOOTH brand

24   nationally until 2007 and Traditional Medicinals did not learn of the launch until late April 2007.

25   _____
     [8] Metamucil offers a Metamucil branded product that on its label refers to its "smooth texture
26   packets."  Sadler Decl., ¶ 32.  That wording, however, does not constitute trademark use, but fair
     use of the term "smooth" providing a description of the fiber products' texture.  In all events, this
27   reference always appears much smaller in size to the prominent METAMUCIL brand.  *Id.*
     Tellingly, the use of  "smooth"  does not appear on the Metamucil product sold in capsule form,
28   because it does not and cannot describe that product.

1   Sadler Decl., ¶ 26.

2              **f)**        ***The Nature of the Goods Favors Traditional Medicinals.***

3          Purchasers of relatively inexpensive goods such as over the counter laxatives typically

4   constitute low involvement products.  *Brookfield*, 174 F.3d at 1060; *Bristol-Myers Squibb Co. v.*

5   *McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1047 (2d Cir. 1992) (affirming finding that consumers of

6   over-the-counter analgesics engaged in "low involvement" purchases due to their relatively

7   inexpensive price).  In these cases, "the risk of likelihood of confusion is increased because

8   purchasers of such products use a lesser standard of purchasing care."  *Recot, Inc. v. Becton*, 214

9   F.3d 1322, 1329 (Fed. Cir. 2000).  Thus, this factor also weighs in Traditional Medicinals' favor.

10             **g)**        ***Novartis' Apparent Intent in Selecting the SENNA SMOOTH***
                             ***Designation Favors Traditional Medicinals.***
11

12         "The law has long been established that if an infringer adopts his designation with the

13  intent of deriving benefit from the reputation of the trademark…, its intent may be sufficient to

14  justify the inference that there are confusing similarities."  *Brookfield*, 174 F.3d at 1059 (citations

15  omitted).  Indeed, the intent factor "favors the plaintiff where the alleged infringer adopted his

16  mark with knowledge, actual or constructive, that it was another's trademark."  *Id.*; Sadler Decl.,

17  ¶ 30, Exh. 10 (Confidentiality Agreement).  Moreover, "when an alleged infringer knowingly

18  adopts a mark similar to another's, courts will presume an intent to deceive the public."  *Official*

19  *Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993); *Beer Nuts, Inc. v. Clover Club*

20  *Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986) (citations omitted) ("One who adopts a mark

21  similar to another already established in the marketplace does so at its peril, because the court

22  presumes he 'can accomplish his purpose: that is, that the public will be deceived.'").  Novartis'

23  intent to trade on Traditional Medicinals' reputation and success by deceiving the public weighs

24  in favor of a preliminary injunction.  *Jockey Intern., Inc.* 185 U.S.P.Q. at 207 ("Only in the most

25  exceptional circumstances will injunctive relief be denied in the case of an intentional

26  infringement.").

27         Novartis knew of Traditional Medicinals' SMOOTH MOVE® brand and its commercial

28  success well before selecting its confusingly similar SENNA SMOOTH mark.  In 2000, Novartis

1-SF/7552751.3                              21          MEMO OF POINTS AND AUTHORITIES ISO
                                                        P'S MOTION FOR PRELIM. INJUNCTION
                                                        (4 07–CV–02457–SBA)

1   pursued use of Traditional Medicinals' all-natural SMOOTH MOVE® laxative formulations.

2   Sadler Decl., ¶ 30, Exh. 10.  While Novartis' business proposal never materialized, this fact alone

3   establishes Novartis' actual knowledge of Traditional Medicinals and the reputation of its

4   SMOOTH MOVE® brand more than seven years ago.  *Id.*

5   Novartis also has known of Traditional Medicinals' objection to the SENNA SMOOTH

6   mark as a result of the opposition proceedings Traditional Medicinals instituted against Novartis'

7   intent-to-use application for the SENNA SMOOTH mark.  Sadler Decl., ¶ 25; Smith Decl.,

8   Exh. 4.  Novartis nonetheless proceeded with the introduction of its confusingly similar SENNA

9   SMOOTH® brand name and packaging apparently in a determined effort to capitalize on the

10  success of Traditional Medicinals' SMOOTH MOVE® product, including its SMOOTH MOVE®

11  SENNA laxative product.  Sadler Decl*., ¶¶* 5, 26-27, 34.  Against this factual backdrop, this

12  factor supports a finding of likelihood of confusion as well.

13              **h)     *Likelihood of Expansion Favors Traditional Medicinals.***

14  The final factor considered in the likelihood of confusion analysis is the likelihood of

15  expansion of the parties' product lines.  *Sleekcraft*, 599 F.2d at 354.  The laxative products sold

16  by Traditional Medicinals and Novartis constitute competitive products in practice and legally, so

17  this factor weighs in Traditional Medicinals' favor.  *See*, Section IV(B)(2)(b), *supra*.  In any

18  event, Novartis' packaging for its SENNA SMOOTH product reveals that it is attempting to

19  directly enter the natural marketplace for laxatives, a market Traditional Medicinals has long

20  occupied.  Sadler Decl., ¶¶ 26-29, 34.  Novartis' product features in the lower right hand corner a

21  depiction of the senna plant with the word "natural."  *Id.*  This packaging directly contrasts with

22  the packaging for the Ex-Lax brand.  *Id.*

23  Moreover, Traditional Medicinals has expanded its SMOOTH MOVE® products to new

24  formats so that it can be used in capsule and powder formants, rather than only as a laxative tea

25  product.  *Id.*, ¶¶ 17, 23-24.  Thus, this factor weighs in Traditional Medicinals' favor.

26                                    * * * * * * * *

27  The *Sleekcraft* factors overwhelmingly establish that Novartis' SENNA SMOOTH

28  designation for a competitive laxative product is likely to cause consumer confusion with the

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)

1   successful SMOOTH MOVE® brand that Traditional Medicinals has used for decades.  Based

2   upon this showing alone, Novartis should be preliminarily enjoined from use of its infringing

3   SENNA SMOOTH designation.  *Duncan McIntosh Co., Inc. v. Newport Dunes Marina LLC*, 324

4   F. Supp. 2d 1078, 1083 (C.D. Cal. 2004) ("In a trademark infringement claim, a plaintiff is

5   ordinarily entitled to a preliminary injunction when it establishes a likelihood of confusion.").

6         **C.    Traditional Medicinals Is Suffering Irreparable Harm.**

7         The irreparable harm prong of the preliminary injunction analysis is presumed satisfied

8   here since Traditional Medicinals has demonstrated a likelihood of confusion.  *GoTo.com*, 202

9   F.3d at 1205 n.4; *K-Swiss, Inc. v. USA AISIQI Shoes, Inc*., 291 F. Supp. 2d 1116, 1120 (C.D. Cal.

10  2003).  The facts evident here, however, further compel a finding of irreparable harm.

11        Novartis' use of its confusingly similar and misleading SENNA SMOOTH designation

12  will damage Traditional Medicinals' reputation among consumers for self-care, laxative products

13  that are free of harsh chemicals, artificial flavors and colorings, and include organic senna of

14  pharmacoepial quality.  Sadler Decl., ¶¶ 22, 33-35.  With its SENNA SMOOTH designation and

15  its packaging focus on the "NEW!" and "Natural Senna" nature of the product offering, Novartis'

16  product only can be viewed as an attempt to reposition its Ex-Lax formulation as a natural

17  laxative product, a market which Traditional Medicinals has long occupied.  *Id.*, ¶¶ 26-29, 33-35.

18  Consumers buying the SENNA SMOOTH product will believe mistakenly that it either is part of

19  the SMOOTH MOVE® brand or that Traditional Medicinals has approved of or is somehow

20  associated with the product.  As Traditional Medicinals' SMOOTH MOVE® products have long

21  been its most popular and best selling brand of products, Traditional Medicinals' will face

22  irreparable harm unless the court grants injunctive relief.  *Id.*  Accordingly, this factor further

23  demonstrates that a preliminary injunction is warranted in this case.

24        **D.    The Balance of Hardships Warrants Granting Injunctive Relief.**

25        Because Traditional Medicinals has established both a likelihood of success on the merits

26  and irreparable harm, the Court need not consider a balance of hardships in order to grant

27  injunctive relief.  In *KOS Pharm., Inc. v. Andrx Corp*., 369 F.3d 700 (3d Cir. 2004), the Court

28

1    held that, because the plaintiff had established a likelihood of success on its trademark

2    infringement and unfair competition claims, an injunction should have been granted despite the

3    defendant's showing that it would suffer a financial loss. *Id.* at 728-30. A weighing of the

4    parties' hardships in this case further demonstrates that a preliminary injunction is warranted.

5        Here, Novartis, as the junior user, had a duty to ensure that its adoption of a new brand for

6    its already existing product did not cause confusion in the marketplace. *Teaching Co. Ltd. P'ship*

7    *v. Unapix Entm't, Inc.*, 87 F.Supp. 2d 567, 583 (E.D. Va. 2000) ("The law provides that a junior

8    user of a mark has an affirmative duty to select a mark that is not confusing."). Moreover,

9    Novartis sells the identical product at essentially the same price under the Ex-Lax brand, so an

10    injunction here will not cause Novartis undue financial hardship or impede consumers' ability to

11    purchase a particular type of product. Thus, the balance of hardships favors the Court's grant of

12    an injunction as Novartis is the junior user, and has existing packaging and an existing brand in

13    the marketplace, which it can continue to sell the same formulation at the same price.

14        **E.**      **The Court's Grant of an Injunction Serves the Public Interest.**

15        "It is well established that trademark law protects not only the private interests of the

16    trademark owner but also the public's interest in not being confused by the infringing

17    products…" *Phillip Morris*, 352 F. Supp. 2d at 1075 (citations omitted). Thus, the purchasing

18    public is an unnamed party in every action for trademark infringement." *Id.* Here, the Court's

19    grant of a preliminary injunction would protect consumers from being deceived by Novartis' use

20    of a confusingly similar mark and packaging to Traditional Medicinals' famous SMOOTH

21    MOVE® mark. For this reason as well, a preliminary injunction is necessary in this case.

22    //

23    //

24    //

25    //

26    //

27

28

1

**V.**     <u>**CONCLUSION**</u>

2          To protect the public and Traditional Medicinals' established trademark rights, Traditional

3    Medicinals respectfully requests that the Court grant its motion and preliminary enjoin Novartis'

4    use of the confusingly similar SENNA SMOOTH designation for its competitive laxative

5    product.

6    Dated: May 29, 2007                          MORGAN, LEWIS & BOCKIUS LLP

7

8                                              By  _____/s/_____

9                                                  ROCHELLE D. ALPERT
                                                   Attorneys for Plaintiff
10                                                 TRADITIONAL MEDICINALS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF POINTS AND AUTHORITIES ISO
P'S MOTION FOR PRELIM. INJUNCTION
(4 07–CV–02457–SBA)